IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| MATEEN HALEEM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:17-cv-00003 |
| | ) | |
| DR. MOISES QUINONES,[1] *et al.*, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Mateen Haleem, a former pretrial detainee at Middle River Regional Jail (MRRJ), alleges that a prison doctor, Dr. Moises Quinones, and other unknown prison officials improperly denied him both his seizure medication and his prescribed narcotic medication while he was held at MRRJ. Both his original complaint and his proposed amended complaint contain three claims, although they list more counts than that.[2] (Compl., Dkt. No. 1; Proposed Am. Compl., Dkt. No. 23-1.) Count I alleges a violation of Haleem's Fourth and Fourteenth Amendment Rights, pursuant to 42 U.S.C. § 1983, against two John Doe correctional officers. Count II also asserts a § 1983 claim, alleging violations of Haleem's Fourth, Eighth, and Fourteenth Amendment rights against Dr. Quinones and, in the proposed amended complaint, a third John Doe defendant. Count III asserts a state law claim, which Haleem has titled as a claim for "respondeat superior," against the Middle River Regional Jail Authority (MRRJA) for the acts of all the individual defendants.

---

[1] Although Haleem sometimes spells the defendant's name as Quiñones, the defendant in his own declaration spells it Quinones. (Quinones Decl., Dkt. No. 15-1.) The court will use the latter spelling.

[2] The original complaint also contains two additional counts, Counts IV and V, which seek punitive damages and attorney fees, respectively. In the proposed amended complaint, those two counts are renumbered to Counts V and VI, and there is no Count IV.

Pending before the court are three motions, all of which have been fully briefed and argued. The first is MRRJA's motion to dismiss the claim against it on the grounds that it is entitled to sovereign immunity under Virginia law. (Dkt. No. 9.) Because the court concludes that MRRJA, a regional jail authority, is entitled to sovereign immunity, the court dismisses the claim against MRRJA for lack of jurisdiction.

The second and third motions are related to one another, to an extent. The second is Dr. Quinones' motion for summary judgment. (Dkt. No. 14.) He has provided undisputed information that he was not employed at the jail during the time-frames alleged in the original complaint (August 2016 through November 2016) and thus seeks dismissal of the claim against him on that ground. In response to that motion, Haleem sought leave to amend his complaint to add different, "corrected" time-frames. Haleem concedes that the claims in the original complaint are subject to dismissal because Quinones was not at MRRJ during the alleged time frame, but he asks that they be dismissed without prejudice. So, as fleshed out at the hearing, the parties appear to agree that the claims related to any August 2016 or later time-frame should be dismissed; the only dispute is whether the dismissal should be with or without prejudice. The court concludes that Quinones is entitled to summary judgment, and it will dismiss with prejudice any claims alleged that are based on events in August 2016 or later.

The third pending motion is Haleem's motion to amend (Dkt. No. 23), which the jail argues should be denied as futile with regard to the claims against it, and which defendant Quinones has not opposed.[3] The court will grant the motion to amend in part, and will allow the amendment to add the 2015 claims against Quinones and to add a third John Doe defendant as to the 2016 occurrences. The motion is denied insofar as Haleem continues to include a claim against

---

[3] Quinones' counsel stated at the hearing that if the summary judgment motion were granted, then he had no objection to the amendment being granted.

MRRJA because such a claim is futile. It is also denied as futile as to any claim brought under the Fourth and Eighth Amendments. The court's reasoning as to all of these rulings is discussed in more detail herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A detailed recitation of the allegations of the complaint is not required for a resolution of the motions before the court. In the original complaint, Haleem alleged that he served "two stints" at MRRJ as a pretrial detainee. (Compl. at 2, Dkt. No. 1.) Prior to being housed there, Haleem was on prescribed narcotic pain medication to treat injuries resulting from a vehicle accident. He also had been taking an anti-seizure mediation since the age of nine. During both times that he was housed at MRRJ, he was denied his seizure medication and his prescribed narcotic pain medication. He claims this resulted in "severe pain," and also caused him to black out and suffer at least one seizure. (*Id.*)

Haleem further alleges that two defendants[4] "punished" him because he filed grievances about "rotten and maggot filled food." (*Id.* at 3.) They repeatedly doused him with pepper spray although he was not resisting, and they cuffed his hands behind his back, mangling his finger until it broke. (*Id.*)

In the original complaint, in a section setting forth the facts related to his claim against Dr. Quinones, there are repeated references to dates in August 2016 and later. (*Id.* ¶¶ 9, 10, 18, 19.) There are no earlier dates explicitly listed. In the proposed amended complaint, the claims asserted are divided into two time-frames: the first asserting claims against Quinones during Haleem's first "stint" in 2015; the second asserting claims against a new defendant, John Doe #3,

---

[4] Although the only defendant identified by name in the caption of Haleem's complaint is Dr. Quinones, in his allegations, he refers to "Defendants Van Devar and Gregory" in alleging the use of excessive force. (Compl. at 1, 3.)

arising from Haleem's second "stint" in 2016. (*Compare* Compl., Dkt. No. 1, *with* Proposed Am. Compl., Dkt. No. 23-1.)

II. DISCUSSION

A. **MRRJA's Motion to Dismiss for Lack of Jurisdiction**

MRRJA's motion to dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)(1) and is based entirely on its argument that it is entitled to sovereign immunity as to the state law claim of "respondeat superior" brought against it in Count III.

A motion to dismiss under Rule 12(b)(1) tests the court's subject-matter jurisdiction over a plaintiff's claim. The plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In deciding a Rule 12(b)(1) motion to dismiss, "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). It must, however, "view[] the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6)." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). Dismissal under Rule 12(b)(1) is proper "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R.*, 945 F.2d at 768).

The subject of whether a regional jail authority is entitled to sovereign immunity is an unsettled question, and it has not been addressed by the Supreme Court of Virginia or the Fourth Circuit. Most federal district courts in Virginia and at least one Virginia circuit court that have addressed the issue have concluded that regional jail authorities are not entitled to sovereign

4

immunity. *See Heywood v. Va. Peninsula Reg'l Jail Auth.*, No. 2:15-cv-195, 2015 WL 5026188, at *6 (E.D. Va. Aug. 21, 2015) (adopting report and recommendation of magistrate judge that stated "the undersigned is not persuaded that [the regional jail] should be treated as a municipal corporation for purposes of governmental immunity"); *Boren v. Nw. Reg'l Jail Auth.*, No. 5:13-cv-13, 2013 WL 5429421, at *4–5 (W.D. Va. Sept. 30, 2013) (holding that a regional jail authority is neither an arm of the state nor entitled to be treated as a municipal corporation and so is not entitled to sovereign immunity);[5] *Heckenlaible v. Va. Reg'l Peninsula Jail Auth.*, No. 4:06-cv-25, 2006 WL 3196750, at *3–4 (E.D. Va. Nov. 1, 2006) (same); *Finamore v. Trent*, No. CL15-000881 (Va. Cir. Ct. (Lynchburg) Oct. 27, 2016) (same); *see also Thornhill v. Aylor*, No. 3:15-cv-24, 2017 WL 2304225, at *2 (May 25, 2017) (acknowledging and discussing that "there is a split between the district courts in this circuit as to whether regional jail authorities are entitled to state sovereign immunity" and seeming to side with those courts that conclude there is no such immunity, but declining to certify the issue to the Supreme Court of Virginia). One judge in the Eastern District of Virginia has held that a regional jail authority does have sovereign immunity. *Dowdy v. Pamunkey Reg'l Jail Auth.*, No. 3:14-cv-3, 2014 WL 2002227 (E.D. Va. May 15, 2014).[6]

---

[5] An appeal was docketed in *Boren*, and briefs were filed in the appeal, but the parties apparently resolved the case and so the appeal was dismissed prior to any decision. *See Boren v. Nw. Reg'l Jail Auth.*, No. 13-7695 (4th Cir.).

[6] Haleem argues that *Dowdy* is an "off point case," that the *Dowdy* court erred by failing to discuss prior opinions from the same court, and that "the same court [i.e., the 2015 decision in *Heywood*] . . . swiftly rejected the *Dowdy* court's analysis," and he thus contends that the case has been "abrogated." (Pl.'s Surreply 19–20.) Haleem also argues that due to "extensive Virginia district court authority" to the contrary, this court should not "reverse course on a matter so commonly established." (*Id.* at 20.) These arguments misapprehend the effect of district court opinions. As the Supreme Court has recognized, "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *Booker v. S.C. Dep't of Corrections*, 855 F.3d 533, 538 n.1 (4th Cir. 2017) (quoting *Camreta*). This court has carefully considered the binding precedent it must consider, including cases from the Supreme Court of Virginia, and believes it has reached a principled decision based on that authority.

This court—with considerable respect for those judges who have reached the contrary conclusion—is convinced that regional jail authorities in Virginia are entitled to sovereign immunity. Thus, it will grant MRRJA's motion to dismiss.

The doctrine of sovereign immunity bars state tort claims against the Commonwealth of Virginia unless it consents. *Va. Elec. & Power Co. v. Hampton Redev. & Housing Auth.*, 225 S.E.2d 364, 367 (Va. 1976) (*VEPCO*); *see also Niese v. City of Alexandria*, 564 S.E.2d 127, 132 (Va. 2002) (noting that the doctrine is "alive and well" in Virginia) (citation omitted). The doctrine extends to counties, as political subdivisions of the Commonwealth, *Mann v. Cty. Bd. of Arlington*, 98 S.E.2d 515, 519 (Va. 1957), and applies to municipalities and other public entities where the claims arise from "governmental" as opposed to "proprietary" functions, *Niese*, 564 S.E.2d at 132. It is clear that the operation of a jail is a governmental function, *Franklin v. Town of Richlands*, 170 S.E. 718, 719 (Va. 1933), and Haleem does not contend otherwise. Indeed, it is well-established that a jail maintained by a single jurisdiction is entitled to sovereign immunity for the type of claim Haleem brings here. *Franklin*, 170 S.E. at 720; *Brown v. Mitchell*, 308 F. Supp. 2d 682, 691 (E.D. Va. 2004) (explaining that sovereign immunity precludes relief against a city for the maintenance of a jail). *See also Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999) (holding that a city in Virginia has sovereign immunity for state tort claims, including intentional torts, that arise from the exercise of its governmental functions).

MRRJA is a regional jail authority created by Augusta County, City of Staunton, City of Waynesboro, City of Harrisonburg, and Rockingham County, all of which independently enjoy sovereign immunity either as counties, which are political subdivisions of the Commonwealth, or as municipalities in the exercise of their governmental functions, as discussed above. Thus, if the member localities maintained their own, separate jails, they would be entitled to sovereign

6

immunity for the state law claim asserted by Haleem. The question before the court, though, is whether a regional jail authority like MRRJA can be deemed to have the status of a municipal corporation.[7] If it has such a status, then sovereign immunity bars the claims in this case.

Virginia's seminal pronouncement on how to determine whether an entity should be deemed a municipal corporation was made in *Hampton Roads Sanitation Dist. Comm'n v. Smith*, 68 S.E.2d 497 (Va. 1952) (*Hampton Roads*). The *Hampton Roads* court surveyed many decisions from various jurisdictions and created a two-part inquiry to resolve seemingly conflicting decisions on the issue, directing courts to "concentrat[e] on two basic factors." *Id.* at 500. "The first is, how many attributes of a municipal corporation does the entity in dispute possess? The second is, in the light of this initial consideration, what is the particular purpose for which it is sought to determine whether or not a municipal corporation is present?" *Id.*

The six attributes the *Hampton Roads* court mentioned were:

(1) Creation as a body corporate and politic and as a political subdivision of the Commonwealth;
(2) Creation to serve a public purpose;
(3) Power to have a common seal, to sue and be sued, to enter into contracts to acquire, hold, and dispose of its revenue, personal, and real property;
(4) Possession of the power of eminent domain;
(5) Power to borrow money and issue bonds which are tax exempt, with interest on such bonds enjoying the same status under tax laws as the interest on bonds of other political subdivisions of the state; and
(6) Management of the corporation vested in a board of directors or a commission.

*City of Richmond v. Richmond Met. Auth.*, 172 S.E.2d 831, 832 (Va. 1970).

In laying out these attributes, the *City of Richmond* court twice described these attributes as "essential." *Id.* Since then, some courts have seized on the "essential" language to reason that

---

[7] Regional jail authorities allow localities to pool their resources for the construction and operation of a jail, in order to reduce the costs and expense associated with constructing and operating a jail facility. House Document No. 58, 1993, attached to Mot. to Dismiss as Exhibit C. The state statute allowing for their creation provides that "the governing bodies of two or more counties, cities, or towns or a combination thereof may by concurrent ordinances or resolutions or by agreement, create a jail authority." Va. Code § 53.1-95.2.

7

all six attributes must apply for an entity to have the status of a municipal corporation. *See, e.g.*, *Heckenlaible*, 2006 WL 3196750, at *4; *Hauth v. Se. Tidewater Opportunity Project, Inc.*, 420 F. Supp. 171, 173–174 (E.D. Va. 1976) (holding that a community action agency whose members were Virginia cities and counties was not a municipal corporation entitled to sovereign immunity and rejecting the argument that not all six attributes are required in every instance).

The court concludes, however, that nothing in *City of Richmond*, or any subsequent case from the Supreme Court of Virginia, has explicitly required that an entity possess *all six* attributes to be deemed a municipal corporation. Instead, that court has stated that an entity can have the status of a municipal corporation if it possesses "enough" of those attributes. *See York Cty. v. Peninsula Airport Comm'n*, 369 S.E.2d 665, 667 n.1 (Va. 1988) (*York*) (explaining that an entity is entitled to the status of a municipal corporation "if it possesses enough of the essential attributes"); *see also* 2012 Op. Va. Att'y Gen. 33 n.13, 2012 WL 1893251, at *2 n.13 (May 18, 2012) (offering opinion that not all six attributes are required for an entity to be treated as a municipal corporation).

Haleem argues, though, that if an entity does not possess all six essential attributes, then a court should not even reach the second prong of the relevant two-part test. (Pl.'s Surreply 11–12.) For support, he relies on language from *VEPCO* that reframes the second part of the *Hampton Roads* inquiry as being "in light of this initial consideration, the particular purpose for determining whether a municipal corporation is present." (*Id.*) He claims that this means that "if an entity does not possess the essential characteristics of a city then the analysis stops there." (*Id.* at 11.) He reads too much into this phrasing of the *Hampton Roads* test.

While true that the *VEPCO* court (like the courts in *Hampton Roads, City of Richmond*, and *York*) had found all six attributes before turning to the second prong, *VEPCO* did not—explicitly or implicitly—modify the test in *Hampton Roads*. Nor has any subsequent Supreme Court of

8

Virginia decision suggested that the purpose for which the inquiry is being made only becomes relevant if all six attributes are present.

In fact, as already noted, the Supreme Court of Virginia has expressly stated that a governmental entity should be entitled to the status of a municipal corporation "if it possesses *enough* of the essential attributes." *York*, 369 S.E.2d at 667 n. 1 (emphasis added). In *York*, all six attributes were in fact present, and Haleem thus argues it is dicta. Even so, there are no binding cases holding that all six must be present for a municipal corporation to be found. And the way the test was expressed in *Hampton Roads,* discussed in *City of Richmond*, and referenced in *York* (even if deemed dicta there), persuades the court that not all six are required.

Having resolved that issue, the court turns to the application of the two-part inquiry to the facts here. As to the number of attributes present, the parties agree that MRRJA possesses four of the six attributes. It is missing two: the power of eminent domain and the designation as a political subdivision. The court thus must turn to the second part of the *Hampton Roads* test, and determine the significance of these missing attributes as to the purpose for which the inquiry is being made, i.e., whether sovereign immunity is available to MRRJA. The court believes that, in light of the entire statutory scheme creating jail authorities, a regional jail authority has the status of a municipal corporation for sovereign immunity purposes, even with these two missing attributes. *Cf. Hampton Roads*, 68 S.E.2d at 501 ("While it is true that the more attributes of a municipal corporation an agency has the more likely it is to be treated as a municipal corporation, the final decision rests on the specific issue of each case.")

First of all, it is true that the words "body corporate and politic" do not appear in the enabling statute for regional jail authorities. Instead, the governing statutory scheme provides that "the governing bodies of two or more counties, cities, or towns or a combination thereof may

9

be concurrent ordinances or resolutions or by agreement, create a jail authority." Va. Code § 53.1-95.2.[8] The General Assembly states that each regional authority "shall be deemed *to be an instrumentality exercising public and essential governmental functions* to provide for the public safety and welfare." Va. Code § 53.1-95.7 (emphasis added).

Significantly, the Supreme Court of Virginia has recognized the importance of the language that *was* used as being very close to the required language. *See Short Pump Town Ctr. Cmty. Dev. Auth. v. Hahn*, 554 S.E.2d 441, 743 n.11 (Va. 2001) (explaining that although a jail authority is not technically "denominated" as a "body politic and corporate," "the enabling legislation for jail authorities provides that such authority 'shall be deemed to be an instrumentality exercising public and essential governmental functions'"); *see also* Va. Code § 53.1-95.22 (noting that the entire article creating jail authorities "shall be liberally construed to effect the purposes thereof").

Additionally, the language in the sections granting specific powers to regional jail authorities further demonstrates that the General Assembly viewed them as a body corporate and politic, even if it did not expressly designate them as such. For example, the same statute refers to a jail authority's "*corporate* purposes," giving it authority to "borrow money for any of its corporate purposes." Va. Code § 53.1-95.7(8). This is a clear statement that the entity is a corporation.

The fact that it is not a *private* corporation is made clear by the next subsection, among others, which confers on the jail authority the power "[t]o exercise any power usually possessed by private corporations performing similar functions." Va. Code § 53.1-95.7(9). If a regional jail authority were a private corporation, there would be no need for the General Assembly to have

---

[8] As noted by MRRJA, the fact that an entity is created by local activation does not preclude a finding that the entity is a municipal corporation, as evidenced by the fact that other entities requiring local activation have been found to be municipal corporations. (Mem. Supp. Mot. to Dismiss 4, Dkt. No. 10) (collecting authority).

even included this subsection. *See, e.g.*, *Hubbard v. Henrico Ltd. P'ship*, 497 S.E.2d 335, 338 (Va. 1998) ("[E]very part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary.")

Both *Hampton Roads* and *York* emphasized that the *intent* of the legislature should also be considered as part of the court's inquiry, regardless of the language used in creating the entity. In *York*, the court explained that even though certain commissions and authorities "are not municipal corporations in the strict sense of the term," they should be recognized as having the status of a municipal corporation "where it appears that the legislature intended that they should be so construed." *York*, 369 S.E.2d at 666 (quoting *Hampton* Roads, 68 S.E.2d at 499). Indeed, the *York* court expressly rejected, as an elevation of "form over substance," the argument that because the legislative act creating the entity did not identify it expressly as a political subdivision, it "cannot occupy the status of a municipal corporation despite the powers delegated to it or the public purpose it serves." *Id.* at 667.

Similarly, as to the power of eminent domain, it is noteworthy that MRRJA may not have direct power of eminent domain, but all of the member localities have the power of eminent domain and could provide any needed facilities to the jail authority. Indeed, Virginia statutes expressly allow both the Commonwealth and public agencies to convey land to regional jails, Virginia Code § 53.1-95.9, and authorize regional jail authorities to accept property of any kind from the Commonwealth or other public agencies, Virginia Code § 53.1-95.7. Thus, the power of eminent domain may be a very important attribute for other purposes, but its absence here is less significant. Put differently, jail authorities can utilize public lands conveyed by the Commonwealth or other public bodies after those entities exercise their powers of eminent domain, so eminent domain becomes a less important attribute.

Additionally, as already noted, the entire purpose for which a regional jail authority is created is to serve an essential governmental function, and the General Assembly has granted them powers that are very characteristic of local governments:

> It has a quintessentially public purpose: to run a jail. Va. Code § 53.1–95.17. It has a governing body. Va. Code § 53.1–95.6. It may acquire property, appoint officers and employees, make contracts, undertake various projects, accept governmental grants and loans, and sue and be sued. Va. Code § 53.1–95.7. Its officers have arrest powers. Va. Code § 53.1–95.8. It may issue tax-free bonds. Va. Code §§ 53.1–95.10, –95.13. It is exempt from taxation. Va. Code § 53.1–95.15. The State reimburses it for construction and operational costs, and pays part of the salaries of its employees. Va. Code § 53.1–95.19. While Virginia law does not designate a jail authority as a political subdivision, for all intents an authority runs a jail the same way a city, county, or town would.

*Dowdy v. Pamunkey Reg'l Jail Auth.*, No. 3:14-cv-003, 2014 WL 2002227, at *3 (E.D. Va. May 15, 2014).

Particularly in the absence of a clear statement from the Supreme Court of Virginia or the Fourth Circuit, this court cannot conclude that the General Assembly, by its failure to include the words "body corporate or politic" in a single statute, meant to—or did—create a scheme whereby the only entity not entitled to sovereign immunity for the operation of a local jail facility in Virginia is a regional jail authority. This is particularly true in light of the fact that the Commonwealth *requires* counties and cities to construct and operate jail facilities, Virginia Code § 53.1-71.1, and given the General Assembly's encouragement of the creation of regional jail authorities in order to conserve financial resources, among other reasons. It makes little sense to this court that the state would: (1) require localities to construct and operate jails (for which they would have sovereign immunity for claims arising from that governmental function); (2) encourage localities to join together and create regional jail authorities in order to reduce jail overcrowding while conserving resources and reducing costs and expenses; and then (3) intend to

not maintain sovereign immunity for the regional jails, without ever warning or explaining that sovereign immunity would not apply to those entities. *Cf. Afzall ex rel. Afzall v. Commonwealth*, 639 S.E.2d 279, 281 (Va. 2007) (explaining that "[o]nly the legislature acting in its policy-making capacity can abrogate sovereign immunity and a waiver of immunity must be explicit and express). Given the flexibility inherent in the *Hampton Roads* inquiry of whether an entity should be treated as a municipal corporation, then, the court concludes that, for purposes of sovereign immunity, MRRJA is a municipal corporation.

Haleem has offered additional arguments in support of his argument that MRRJA does not have the status of a municipal corporation, and the court touches on a few of them briefly. First, the court is unconvinced by Haleem's position, argued at the hearing, that the General Assembly's failure to act in response to federal district court or state circuit court rulings that regional jail authorities are not entitled to sovereign immunity, is somehow implicit approval of those decisions. *See also Thornhill*, 2017 WL 2304225, at *4 (recognizing that bills were twice introduced in the General Assembly to grant sovereign immunity to regional jails, but neither passed); *Heywood*, 2015 WL 5026188, at *8 n.5. The General Assembly may fail to act for many reasons. Indeed, rather than being an indication that the General Assembly did not want to confer sovereign immunity on regional jail authorities, the General Assembly may have failed to pass those bills because legislators believed the bill to be unnecessary. The court will not base its conclusions, in whole or in part, on the General Assembly's failure to act to "correct" non-binding court decisions. *Cf. Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("Judicial investigation of legislative history has a tendency to become . . . an exercise in 'looking over a crowd and picking out your friends.'") (citation omitted).

13

Haleem also points out that at least one court rejecting sovereign immunity for regional jails noted that private jails also share many attributes found in a regional jail authority, but would not be deemed a municipal corporation. (Pl.'s Surreply at 19 n.6 (citing *Heywood*, 2015 WL 502618, at *6).) From this, the *Heywood* court reasoned that the two attributes a regional jail authority lacks "are those most intrinsic to municipal corporations"—the designation by the legislature as a body politic or political subdivision and the power of eminent domain. For the reasons already discussed, the court does not believe that these two missing attributes are dispositive and so does not adopt that reasoning.

For all of the foregoing reasons, the court concludes MRRJA is entitled to sovereign immunity and will grant its motion to dismiss.

**B.      Dr. Quinones' Motion for Summary Judgment**

The court turns next to Dr. Quinones' motion for summary judgment. Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

As noted in the introduction to this opinion, Haleem does not dispute that his 2016 claims against Quinones should be dismissed. And with good reason. Dr. Quinones has submitted a contract and two sworn declarations, all of which show that he was not working at MRRJ after June 2016. The dates in the claim against him in the original complaint, however, are all from

14

August 2016 or later. Significantly, moreover, Haleem did not provide any evidence in opposition to the motion and has wholly failed to raise a dispute of fact on this issue. So, there is no dispute that Quinones cannot be held liable for actions taken in August 2016 or later, when he no longer worked at MRRJ. Thus, summary judgment is appropriate here.

The only remaining issue as to this motion is that Haleem requests that the dismissal of this claim be without prejudice. He offers no authority for this request, though, and summary judgment in a defendant's favor on a claim is generally a judgment on the merits and would be with prejudice. Haleem's counsel stated at the hearing that he was concerned that perhaps there would be something learned in discovery that would cause him to want to bring the claims again. But the time for seeking discovery in order to respond to that issue is over. In response to the summary judgment motion, Haleem could have requested that he be given an opportunity for discovery on this issue, pursuant to the procedure set forth in Federal Rule of Civil Procedure 56(d). He did not. Furthermore, although he requests a dismissal without prejudice, he cites to no authority that would allow this court to dismiss a claim without prejudice at the summary judgment stage under the circumstances here.

For these reasons, the court will grant summary judgment in Dr. Quinones' favor and will dismiss with prejudice the claims in the complaint that were based on events in August 2016 or later.

C. **Haleem's Motion to Amend**

Lastly, the court addresses Haleem's motion to amend. The court's determination of whether to grant this motion is governed by Rule 15(a)(2) of the Federal Rules of Civil Procedure, which directs that the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This liberal standard "gives effect to the federal policy in favor of resolving cases on

their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citations omitted). The court need not give leave to amend, however, where an amendment would be prejudicial to the defendant, the plaintiff has acted in bad faith, or the amendment would be futile. *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). An amendment is futile where "the proposed amendments could not withstand a motion to dismiss . . . ." *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

Here, MRRJA objects to allowing the amended complaint on two grounds: (1) sovereign immunity bars the claims against it; and (2) the 2015 claims Haleem seeks to add are barred by the applicable one-year statute of limitations.[9] Having concluded that sovereign immunity bars the claim against MRRJA, the court agrees that leave to amend should not encompass leave to include a claim against MRRJA.

Additionally, as the court expressed at the hearing, and as counsel for Haleem acknowledged, the Supreme Court has squarely held that the Eighth Amendment does not apply to conditions of confinement claims brought by pretrial detainees because that amendment operates only after the state has secured a conviction. *Mitchell v. Aluisi*, 872 F.2d 577, 581 (4th Cir. 1989); *see also Belcher v. Oliver*, 898 F.2d 32 (4th Cir. 1990) ("[T]he Fourteenth Amendment right of

---

[9] In response to MRRJA's argument that the 2015 claim against it is barred by the applicable statute of limitations, Haleem appears to concede that the one-year limitations period in Virginia Code § 8.01-243.2 applies to his claims. He contends, however, that the statute violates his equal protection rights in that it treats persons confined in correctional facilities (or previously confined in correctional facilities) less favorably than other persons bringing lawsuits in Virginia, who receive the benefit of a two-year statute of limitations for personal injury claims. After Haleem provided notice to Virginia's Attorney General of his constitutional challenge, the Commonwealth filed a thorough brief as intervenor in defense of the statute. (Dkt. No. 36.) No response to that was filed by Haleem. Nonetheless, the court does not believe it is appropriate to address the limitations issue at this time for several reasons. First of all, the only party who raised the issue was MRRJA, and MRRJA is being dismissed from the lawsuit on other grounds. Also, Dr. Quinones did not oppose the filing of the amended complaint on that ground, and he is named in the 2015 claim. Thus, the court does not address the limitations issue at this time, particularly since the statute of limitations is an affirmative defense that could be waived by Dr. Quinones. *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653–56 (4th Cir. 2006) (explaining that it is generally improper for a court to sua sponte consider a statute of limitations defense, at least absent a separate obligation to independently examine the merits of a petition or complaint, e.g., in a habeas case or a case where the plaintiff is proceeding in forma pauperis).

pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.").

Likewise, as to Haleem's purported Fourth Amendment claim, the Fourth Circuit has explained:

> [W]e have made clear that Fourth Amendment protections do not extend to . . . pretrial detainees. *Riley v. Dorton*, 115 F.3d 1159 (4th Cir. 1997) (en banc). . . . [Rather], "excessive force claims of a pretrial detainee . . . are governed by the Due Process Clause of the Fourteenth Amendment." *Young v. Prince George's Cty.,* 355 F.3d 751, 758 (4th Cir. 2004) (quoting *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998)).

*Orem v. Rephann*, 523 F.3d 442, 444 (4th Cir. 2008), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam). So, Haleem's claims are properly asserted only under the Fourteenth Amendment and not under the Eighth or Fourth Amendments.

Accordingly, Haleem's motion to amend will be granted in part and denied in part. Haleem will be directed to file a modified amended complaint not later than 14 days after entry of the accompanying order. His amended complaint shall assert the claims alleged in the proposed amended complaint, but shall omit any claim against MRRJA and omit any claim under the Fourth or Eighth Amendment.

### III. CONCLUSION

For the reasons discussed above, MRRJA's motion to dismiss will be granted, Dr. Quinones' motion for summary judgment will be granted, and Haleem's motion to file an amended

complaint is granted in part and denied in part, as set forth above.

An appropriate order will be entered.

Entered: September 30, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge