## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | | |
|---|---|---|
| MATEEN HALEEM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **CAFN: 5:17-CV-003-EKD** |
| Dr. MOISES QUIÑONES, | ) | |
| in his individual capacity, | ) | |
| Dr. MICHAEL MORAN, | ) | |
| in his individual capacity, | ) | **JURY TRIAL DEMANDED** |
| CARLSTON VANDEVANDER, | ) | |
| in his individual capacity, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DAVID GREGORY, | ) | |
| in his individual capacity | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiff,

Mateen Haleem, files this Second Amended Complaint, using 42 U.S.C. § 1983 as

the statutory vehicle to vindicate his rights under the First and Fourteenth

Amendment of the U.S. Constitution, and all other applicable laws. Plaintiff

makes three claims pursuant to 42 U.S.C. § 1983: (1) that while a pretrial

detainee, Defendants used excessive force against Plaintiff, (2) while a pretrial

detainee, Defendants showed deliberate indifference to Plaintiff's diagnosed and

serious medical need for his seizure medication, which Plaintiff had been prescribed since the age of 9; and (3) named Defendants retaliated against Plaintiff for filing grievances with respect to perceived unlawful conditions of confinement.

### A. Procedural Posture regarding this Amendment

Mr. Haleem filed his Complaint on January 20, 2017. (See ECF 1.) The first response to Plaintiff's Complaint was made by Middle River Regional Jail Authority on February 17, 2017, in the form of a Motion to Dismiss. (ECFS 9 & 10.) Plaintiff's first Complaint contained the wrong year (2016) regarding the first time Mr. Haleem entered Middle River Regional Jail (hereinafter "MRRJ") on August 8, 2015 (not 2016). (See Ex. 1, for a grievance Mr. Haleem filed in August 2015, as evidence that indeed he was at MRRJ in August 2015.) Now that the misnomer has been clarified regarding the correct August 8, 2015 date, both Defendant Quinones and Jack Lee's own affidavits undisputedly demonstrate that Quinones was MRRJ's physician during Mr. Haleem's first stint at MRRJ from August 8, 2015 through late September 2015. (See ECFs 15-1 & 15-2.)

Plaintiff continued discovery, including issuing a subpoena on December 11, 2017 to Jack Lee, in order to identify the John Doe Defendants from the Complaint.  In response to that subpoena, MRRJ produced documents from

2

which the Plaintiff was able to identify the John Doe Defendants, which Plaintiff

has now named.

## INTRODUCTION

The Defendants deprived Mr. Haleem of his seizure medication.  As a

result, Mr. Haleem blacked out on multiple occasions and suffered at least one

seizure, during which Mr. Haleem was shaking and his eyes rolled to the back of

his head. These same Defendants never provided Mr. Haleem with prescription

pain medication to treat his medically diagnosed severe back injury, including a

broken vertebrae, torn L5 disc, and two pinched nerves.  Mr. Haleem suffered

these injuries in a traumatic vehicle accident in which Mr. Haleem was not at

fault. Defendants told Mr. Haleem he could not receive his prescribed pain

medication because MRRJ does not provide inmates with narcotic pain

medication—per policy of MRRJA. As a result, Mr. Haleem endured severe pain

during his two separate incarceration periods at MRRJ. See Williams v. Benjamin,

77 F.3d 756, 762 (4th Cir. 1996) (stating, "[i]ndeed, we have specifically

recognized that the objective component can be met by 'the pain itself,' even if an

inmate has no 'enduring injury'").

On top of causing Mr. Haleem to suffer blackouts and to suffer severe back

pain that prevented him from sleeping, Defendants Vandevander and Gregory

punished Mr. Haleem for grieving about his rotten and maggot filled food by

going into his cell; repeatedly dousing his eyes with pepper spray even though he was not resisting, as evidenced by the fact that he was placing his hands behind his back as he was repeatedly peppered sprayed in his eyes; cuffing his hands behind his back; and thereafter mangling his finger ***until it broke***. Mr. Haleem, as a free citizen, now seeks compensation for the abuse he suffered at the hands of these Defendants while a pre-trial detainee at Middle River Regional Jail.

## JURISDICTION AND VENUE

### 1.

Jurisdiction is proper under 28 U.S.C. § 1331 and 1343(a)(4), as well as under 42 U.S.C. § 1983. And Venue is proper under 28 U.S.C. § 1391(b) and L.R. 2 (b) because (1) a substantial part of the events and omissions giving rise to Mr. Haleem's claims occurred within this District and Division and (2) Defendants reside and transact business in this District and Division. Venue is also proper on the supplemental jurisdiction of this Court to adjudicate claims arising under state law pursuant to 28 U.S.C. § 1367(a).

## ADMINISTRATIVE EXHAUSTION

### 2.

Mr. Haleem is not incarcerated and thus does not have to demonstrate administrative exhaustion.  Cofield v. Bowser, 247 F. App'x 413, 414 (4th Cir.

2007) (reasoning, "[b]ecause Cofield was not a prisoner when he filed his complaint, the PLRA exhaustion requirement is not applicable to his § 1983 action.")

## PARTIES

3.

Mr. Haleem is aged 39 and currently not incarcerated. Mr. Haleem was at MRRJ twice as a pre-trial detainee. The first time he entered MRRJ was from approximately August 8, 2015 to late September 2015. The second time he entered MRRJ was from August 2016 through November 2016. A Judge, during a bench trial, found Mr. Haleem ***not guilty*** of the charges that caused him to be housed at MRRJ on both occasions in 2015 and 2016. The facts pertaining to his claims are outlined in the Fact Section and Counts below.

4.

Defendant Moises Quiñones was the medical doctor at Middle River Regional Jail ("MRRJ"), from at least July 1, 2015 through June 30, 2016. During that time period (August 8, 2015 to late September 2015), Quinones had the obligation to provide Plaintiff with his requested seizure and narcotic pain medication. During the 2015 time period, Dr. Quiñones knew Plaintiff required narcotic pain and seizure medication because Quiñones reviewed Plaintiff's medical records, which demonstrated that while at MRRJ, Plaintiff required

prescribed narcotic pain and seizure medication to treat his various injuries. During the 2015 time period, Dr. Quiñones never provided Plaintiff with his required narcotic pain and seizure medication and as a result, Plaintiff suffered blackouts and at least one seizure in which his body shook, and his eyes rolled back into his head. During the 2015 time period, Plaintiff made several requests for his narcotic pain medication and these requests reached Dr. Quiñones per policy of submitting such requests to Dr. Quiñones. Also, Dr. Quiñones never performed an independent examination of Plaintiff to determine whether he needed narcotic pain medication.

At all times relevant to this Complaint, Dr. Quiñones was responsible for ensuring that he knew all controlling law within the Fourth Circuit regarding deliberate indifference to medical needs, including the Fourth Circuit Court of Appeal's case law with respect to under-medicating inmates and flat-out denying narcotic pain medication to inmates who demonstrate a medical need for said medication.

At all times relevant to this Complaint, Quiñones was acting under the color of state and federal laws, and Quiñones was responsible for knowing and acting in accordance with all policies, procedures, orders, special orders, general orders, guidelines and regulations of the Middle River Regional Jail and Middle

River Regional Jail Authority, while upholding his responsibility as the general doctor for MRRJ.

5.

During the second time period (August 2016 through November 2016) that Mr. Haleem was housed at MRRJ, Defendant Dr. Michael Moran, at all times relevant, was the medical doctor at MRRJ who had the obligation to provide Plaintiff with his requested seizure and narcotic pain medication. During the 2016 time period that Mr. Haleem was housed at MRRJ, Dr. Moran knew Plaintiff required narcotic pain and seizure medication because Dr. Moran, upon information and belief, reviewed Plaintiff's medical records, which demonstrated that while at MRRJ, Plaintiff required prescribed narcotic pain and seizure medication to treat his various injuries. During the 2016 time period that Mr. Haleem was housed at MRRJ, Dr. Moran never provided Plaintiff with his required narcotic pain and seizure medication and as a result, Plaintiff suffered blackouts and at least one seizure in which his body shook and his eyes rolled back into his head. During the 2016 time period that Mr. Haleem was housed at MRRJ, Plaintiff made several requests for his narcotic pain medication and these requests reached Dr. Moran per policy of submitting such requests to Dr. Moran. Also, during the 2016 time period that Mr. Haleem was housed at MRRJ, Dr.

Moran never performed an independent examination of Plaintiff to determine whether he needed narcotic pain medication.

At all times relevant to this Complaint, Dr. Moran was responsible for ensuring that he knew all controlling law within the Fourth Circuit regarding deliberate indifference to medical needs, including the Fourth Circuit Court of Appeal's case law with respect to under-medicating inmates and flat-out denying narcotic pain medication to inmates who demonstrate a medical need for said medication.

At all times relevant to this Complaint, Dr. Moran was acting under the color of state and federal laws, and Dr. Moran was responsible for knowing and acting in accordance with all policies, procedures, orders, special orders, general orders, guidelines and regulations of the Middle River Regional Jail and Middle River Regional Jail Authority, while upholding his responsibility as the general doctor for MRRJ.

6.

Defendants Vandevander and Gregory, at all times relevant, were correctional officials at MMRJ. At all times relevant to this Complaint, Vandevander and Gregory were responsible for ensuring that they knew all controlling law within the Fourth Circuit regarding deliberate indifference to

medical needs, including the Fourth Circuit Court of Appeal's case law with respect to excessive force against inmates.

At all times relevant to this Complaint, Vandevander and Gregory were acting under the color of state and federal laws, and Vandevander and Gregory were responsible for knowing and acting in accordance with all policies, procedures, orders, special orders, general orders, guidelines and regulations of the Middle River Regional Jail and Middle River Regional Jail Authority, while upholding their responsibilities.

Prior to repeatedly dousing Mr. Haleem's eyes with pepper spray, John Vandevander had advised Mr. Haleem that if Mr. Haleem kept filing grievances, Vandevander would "get him" and "lock him down." Despite what Vandevander told him, Mr. Haleem continued to file grievances for what he perceived as unconstitutional conditions of confinement. Shortly thereafter, Vandevander entered into Mr. Haleem's cell and told him to lock down. Mr. Haleem asked why and Vandevander told him again to lock down. Then, Mr. Haleem asked to speak to a supervisor because he had previously been told by Vandevander's supervisor that he would not be put on lock down for filing grievances. Defendant Gregory then entered the cell and began dousing Mr. Haleem's eyes with pepper spray repeatedly—all the while Mr. Haleem was not resisting physically in any way. At that point, Vandevander and Gregory

slammed Mr. Haleem's head into the cell block wall, and cuffed Mr. Haleem's hands behind his back. According to Haleem, after Mr. Haleem was cuffed and not resisting, Vandevander and Gregory wrangled Mr. Haleem's hands to the point that one of his fingers snapped and broke.

## **RELEVANT FACTS**

### A. **Facts related to Mr. Haleem's claims of deliberate indifference against Dr. Quiñones and Dr. Moran**

7.

Mr. Haleem is aged 39, and currently not incarcerated.

8.

On or about August 9, 2015 Mr. Haleem entered MRRJ, and on that date, Mr. Haleem went through the typical initial screening process, to include a medical screening by a nurse staff member.

9.

At his initial medical screening that took place in August 2015, Mr. Haleem informed the nurse that he (1) requires his seizure medication and (2) requires prescribed pain medication because he suffers from a medically diagnosed back injury, including a broken vertebrae, torn disc (L5), and two pinched nerves—all injuries suffered as a result of a traumatic vehicle crash in which Mr. Haleem received a settlement for not being at fault.

10.

Also, during the same initial medical screening that took place in August 2015, Mr. Haleem signed a Release Authorization, authorizing an MRRJ staff member to request Mr. Haleem's medical records from his treating physician(s). Donna Reynolds requested said medical records.

11.

The medical records for which Mr. Haleem signed a medical release—permitting MRRJ to see his medical records—contained medical diagnosis of Mr. Haleem's need for seizure medication and Mr. Haleem's need for narcotic pain medication to treat his medically diagnosed broken vertebrae, torn disc at L5, and two pinched nerves back injury—all injuries suffered as a result of a traumatic vehicle crash in which Mr. Haleem received a settlement for not being at fault. Upon information and belief, Dr. Quiñones read these medical records.

12.

After being assigned an inmate cell at MRRJ, Mr. Haleem began to submit Medical Request Authorization forms to Defendants, in order to receive his prescribed seizure and narcotic pain medication; within one day of Mr. Haleem making the request, these medical request forms were transmitted to Dr.

Quiñones, who read Mr. Haleem's request for medical attention and the reasons for those requests.

13.

While working in his capacity as a physician for MRRJ, Defendant Quiñones failed to provide Mr. Haleem with his prescribed medications—for the approximate month-and-a-half he was at MRRJ. As a result, during that entire time-period, Mr. Haleem experienced severe blackouts from failure to take his seizure medication. Those blackouts affected his memory. He also suffered at least one seizure in which he was shaking and his eyes rolled to the back of his head.

14.

While working in his capacity as a physician for MRRJ, Defendant Moran failed to provide Mr. Haleem with his prescribed medications—for the approximate-month-and-a-half he was at MRRJ. As a result, during that entire time-period, Mr. Haleem experienced at least one seizure in which he was shaking and his eyes rolled to the back of his head.

15.

While working in his capacity as a physician for MRRJ, Defendant Quiñones failed to provide Mr. Haleem with his prescribed medications—for the approximate-month-and-a-half he was at MRRJ. As a result, during that entire

time-period, Mr. Haleem experienced severe back pain from failure to take his pain medication for his medically diagnosed broken vertebrae, torn disc (L5), and two pinched nerves back injury—all injuries suffered as a result of a traumatic vehicle crash in which Mr. Haleem received a settlement for not being at fault. See Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996) (stating, "[i]ndeed, we have specifically recognized that the objective component can be met by 'the pain itself,' even if an inmate has no 'enduring injury'").

16.

MRRJA has a policy of refusing to provide prescription narcotic pain medication to inmates, as evidenced by one nurse telling Mr. Haleem that inmates can never receive prescribed narcotic pain medication while incarcerated at MRRJ.

17.

MRRJA representatives, while on duty at MRRJ, refused to provide Mr. Haleem with his prescribed narcotic medication to treat his medically diagnosed broken vertebrae, torn disc (L5) and two pinched nerves back injury *because*, according to Mr. Haleem, an MRRJ official told him that MRRJ does not provide prescription pain medication to any inmate.

18.

While Mr. Haleem was housed at MRRJ from August 9, 2015 through mid-to-late September 2015, no MRRJ medical staff member, including Dr. Quiñones, met with Mr. Haleem, in an attempt to determine if he needed prescribed narcotic pain medication to treat his medically diagnosed broken vertebrae, torn disc (L5), and two pinched nerves—despite Mr. Haleem's **numerous grievances** stating that he needed his medically prescribed narcotic pain medication.

19.

While Mr. Haleem was housed at MRRJ from August 9, 2015 through mid-to-late September 2015—and despite telling Mr. Haleem that an MRRJ doctor would see him—no MRRJ medical staff member, including Dr. Quiñones, met with Mr. Haleem, to make an independent assessment of Mr. Haleem's complaint about back pain such as ordering x-rays, an MRI, or any other normal assessment procedure routinely used by physicians to assess a complainant's back injury.

20.

During Mr. Haleem's second stint at MRRJ from approximately August 2016 through November 2016, he had his pain medication with him when he entered MRRJ, but MRRJ officials immediately took the pain medication away

from him, while telling him that MRRJ does not permit inmates to have prescribed narcotic pain medication.

21.

During Mr. Haleem's second stint at MRRJ from August 2016 through November 2016, no MRRJ medical staff member, including Dr. Moran, met with Mr. Haleem, in an attempt to determine if he needed prescribed narcotic pain medication to treat his medically diagnosed broken vertebrae, torn disc (L5), and two pinched nerves—despite Mr. Haleem numerous grievances stating that he needed his medically prescribed narcotic pain medication.

22.

During Mr. Haleem's second stint at MRRJ from August 2016 through November 2016, no MRRJ medical staff member met with Mr. Haleem, including Dr. Moran, to make an independent assessment of Mr. Haleem's complaint about back pain such as ordering x-rays, and MRI or other normal assessment procedures routinely used by physicians to assess a complainant's back injury.

23.

During Mr. Haleem's second stint at MRRJ from August 2016 through November 2016, he repeatedly *submitted grievances* based on MRRJ staff failing to provide him with his seizure medication and prescription narcotic pain medication. Dr. Moran was informed about these grievances and thus knew Mr.

Haleem required his seizure medication and his prescription narcotic pain medication. Dr. Moran also knew Mr. Haleem needed medication because he reviewed Mr. Haleem's medical records, yet, never prescribed Mr. Haleem his subject prescription medication and never took any steps to ensure Mr. Haleem received his subject prescription medication such as requiring medical staff to order and provide the subject medication to Mr. Haleem.

24.

While taking his prescribed seizure medication of which he repeatedly requested from Defendants, Mr. Haleem does not experience blackouts.

25.

While taking his prescribed narcotic pain medication of which he repeatedly requested from Defendants, Mr. Haleem does not experience severe pain.

**B. Facts Related to Mr. Haleem's excessive force claim against Defendants Vandevander and Gregory.**

26.

After being released in mid-to later September of 2015, Mr. Haleem ultimately returned to MRRJ as a pretrial detainee, related to the same previous charge, in August 2016.

16

27.

Upon return to MRRJ in August 2016, Mr. Haleem began to submit numerous grievances about cold and rotten food, to the point that Defendants Vandevander and Gregory, amongst others, targeted him as a "trouble maker," and told Mr. Haleem that if he kept submitting grievances "he would get it" by putting Mr. Haleem on lock down.

28.

Mr. Haleem told Captain Shiplett, Major Nichols, and Corporal Thomas at MRRJ about the threat that "he would get it" if he kept submitting grievances, and Captain Shiplett, Major Nichols and Corporal Thomas told Mr. Haleem that no one would retaliate against him for filing grievances regarding the failure to receive his medication.

29.

One day, after Mr. Haleem had been threatened for filing grievances, and after Shiplett, Nichols, and Thomas assured him that no one would retaliate against him for filing grievances, Defendant Vandevander entered Mr. Haleem's cell and told Mr. Haleem to "lock down." Mr. Haleem raised his hands in compliance, stood still, and asked "what's going on."

30.

After telling Mr. Haleem to "lock down" once, Defendant Vandevander again told Mr. Haleem to "lock down" and Mr. Haleem continued to keep his hands raised in compliance, continued standing still, while asking to speak to the Major Thomas, who told him Mr. Haleem that he would not experience retaliation (i.e. locked down) for submitting grievances about his serious medical conditions.

31.

After Mr. Haleem asked to speak to Major Thomas as referenced in above paragraph 30, Defendant Gregory immediately entered Mr. Haleem's room; sprayed Mr. Haleem's eyes with pepper spray repeatedly; then Mr. Haleem turned around to face the wall with his hands behind his back, in full compliance, waiting to be cuffed, and that's when both Defendants Vandevander and Gregory slammed Mr. Haleem's head into the wall and cuffed his hands behind his back.

32.

After cuffing Mr. Haleem's hands behind his back, Defendants Vandevander and Gregory grabbed Mr. Haleem and deliberately wrangled Mr. Haleem's hand until one of his fingers snapped and broke.

33.

After cuffing Mr. Haleem's hands behind his back, and thereafter breaking his finger, Defendants Vandevander and Gregory moved Mr. Haleem outside into the prison hallway, where they, along with correctional officer Fetty, began walking Mr. Haleem to solitary confinement/administrative segregation.

34.

While taking Mr. Haleem to solitary confinement as mentioned in above paragraph 33, Defendants Vandevander and Gregory used Mr. Haleem's head as a battering ram to open up the multiple steel doors that they encountered on their way to solitary confinement/administrative segregation. Mr. Haleem—who suffers from seizures that can be triggered in multiple ways—blacked out as a result of his head slamming against steel doors.

35.

Once in solitary confinement, Mr. Haleem's hands were uncuffed, and as a result, Mr. Haleem immediately looked at his finger that had been wrangled by Defendants Vandevander and Gregory. Mr. Haleem's finger was dangling and deformed, so he immediately called for medical assistance. A nurse (Hoopengardener) arrived, looked at this dangling finger, and summarily declared: "there is nothing wrong with his hand." Eventually, Mr. Haleem saw a doctor and his finger was diagnosed as broken.

**COUNT I**

**VIOLATION OF MR. HALEEM'S FOURTEENTH AMENDMENT RIGHTS**
**AS A PRE-TRIAL DETAINEE PURSUANT TO 42 U.S.C. § 1983**
(*Federal claim against Defendant Vandevander and Gregory*)

36.

Plaintiff fully incorporates paragraphs 3-35, *and any paragraph this Court deems relevant*, as full stated herein to support Plaintiff's Count I.

37.

Based on the incorporated paragraphs to support this Count, Defendants Vandevander and Gregory violated Mr. Haleem's right to be free from excessive force, a right that was clearly established at the time Defendants used excessive, unreasonable force to break Mr. Haleem's finger. Said use of force by Defendants Vandevander and Gregory was also unconstitutional because it was objectively unreasonable. Consequently, Mr. Haleem is entitled to all damages permissible under controlling law, as well as attorney fees and cost regarding this lawsuit.

## COUNT II

### VIOLATION OF MR. HALEEM'S FOURTEENTH AMENDMENT RIGHTS PURSUANT TO 42 U.S.C § 1983
*(Federal claim against Defendants Dr. Quiñones and Dr. Moran)*

38.

Plaintiff fully incorporates paragraphs 3-5, 7- 25, *and any paragraph this Court deems relevant*, as full stated herein to support Plaintiff's Count II.

39.

Based on the incorporated paragraphs to support this Count II, Defendants Quiñones and Moran violated Mr. Haleem's right to be free from deliberate indifference to his known serious medical need for both his seizure medication and pain medication, and said right was clearly established at the time Defendant Quiñones and Moran deliberately failed to provide Mr. Haleem with his seizure medication and deliberately failed to provide Mr. Haleem with his pain medication—while all the time knowing that Mr. Haleem required said prescribed medication to avoid serious injury/pain. Consequently, Mr. Haleem is entitled to all damages permissible under controlling law, as well as attorney fees and cost regarding this lawsuit.

21

# COUNT III

## RETALIATION
## IN VIOLATION OF THE FIRST AMENDMENT
## PURSUANT TO 42 U.S.C. § 1983
*(Federal claim against Defendant Vandevander and Gregory)*

40.

Plaintiff fully incorporates paragraphs 3, 6-8, 23, 26-37, *and any paragraph this Court deems relevant*, as full stated herein to support Plaintiff's Count III.

41.

Based on the incorporated paragraphs to support this Count, Defendants Defendant Vandevander and Gregory violated Mr. Haleem's First Amendment right to protected free speech by retaliating against Mr. Haleem for filing grievances, a right that was clearly established at the time that Defendant Vandevander and Gregory came Mr. Haleem's cell to "lock him down" because he refused to stop filing grievances, and by using excessive, unreasonable force to repeatedly douse his eyes with pepper spray even though he was not resisting; cuffing his hands behind his back; and thereafter mangling his finger until it broke. Consequently, Mr. Haleem is entitled to all damages permissible under controlling law, as well as attorney fees and cost regarding this lawsuit.

## COUNT IV

## PUNITIVE DAMAGES

(*Against Defendants individually*)

Based on the facts alleged in this complaint**,** Plaintiff is entitled to punitive damages under all applicable laws, because Defendants acted with a willful and conscious indifference to the law that protects Mr. Haleem's Constitutional rights.

## COUNT V

## ATTORNEY FEES

Based on the facts alleged in this Amended Complaint**,** Mr. Haleem is entitled to attorney fees under all applicable laws.

**WHEREFORE**, Mr. Haleem prays for a trial by jury of twelve and judgment against Defendants as follows:

(a) The process issue and service be had on each Defendant;

(b) That judgment be granted in favor of the Plaintiff against the Defendants, jointly and severally, for the injuries of Plaintiff;

(c) That Plaintiff recovers compensatory damages including pain and suffering, lost income and future lost income, and other expenses in an amount to be determined at trial, including attorney fees;

23

(d) Plaintiff be awarded damages for his lost earnings and reduction in his

earning capacity from Defendants;

(e) That Plaintiff recover all costs of this litigation;

(f) That a jury trial be held on all issues so triable;

(g) Plaintiff have Judgment against Defendants for punitive damages; and

(h) That Plaintiff receives such other and further relief as the Court deems

just and proper.

Respectfully submitted on this 4th day of April 2018.

/s/ MARIO B. WILLIAMS
Mario B. Williams
VSB No.: 91955

NEXUS DERECHOS HUMANOS ATTORNEYS, INC.
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
404-654-0288 /703-935-2453 FAX
mwilliams@ndhlawyers.com
*Counsel for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

Respectfully submitted this 4th day of April 2018,

<u>/s/ MARIO B. WILLIAMS</u>
Mario B. Williams
VSB No.: 91955

NEXUS DERECHOS HUMANOS ATTORNEYS, INC.
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
404-654-0288 / 703-935-2453 FAX
mwilliams@ndhlawyers.com
*Counsel for the Plaintiff*

25